[No. 70830-4. En Banc.]
Argued June 12, 2001.    Decided September 20, 2001.

THE CITY OF BURIEN, ET AL., *Respondents*, v. FREDERICK C. KIGA, *as Director of the Department of Revenue*, ET AL., *Appellants*.

*Christine O. Gregoire, Attorney General, James K. Pharris, Senior Assistant,* and *Cameron G. Comfort, Assistant,* for appellants.

*Norm Maleng, Prosecuting Attorney for King County,* and *Margaret Pahl* and *Jeffery A. Richard, Deputies; Russell D. Hauge, Prosecuting Attorney for Kitsap County,* and *Sue A. Tanner, Deputy; Leland B. Kerr* (of *Evans & Kerr, P.S.*); *Thomas F. Ahearne* (of *Foster Pepper & Shefelman, P.L.L.C.*); *Michael E. Weight, Burien City Attorney; Greg A. Rubstello* (of *Ogden Murphy Wallace, P.L.L.C.*); *Mark H. Sidran, Seattle City Attorney,* and *Quentin R. Yerxa, Cynthia U. Seu,* and *Sandra Cohen, Assistants; Michele Radosevich* (of *Davis Wright Tremaine); Gary N. McLean, Des Moines City Attorney; Michael P. Ruark* and *Rod P. Kaseguma* (of *Inslee, Best, Doezie & Ryder, P.S.*); *Mark O. Erickson, Olympia City Attorney; James H. Kaufman, Prosecuting Attorney for Whitman County,* and *Ronald D. Shirley, Deputy; Jeremy Randolph, Prosecuting Attorney for*

*Lewis County*; *Edward G. Holm, Prosecuting Attorney for Thurston County*, and *Jane D. Futterman, Deputy*; *Clark B. Snure* (of *Snure Law Office*); *Brian K. Snure* (of *Snure & Regeimbal, P.L.L.C.*); *Michael R. Kenyon* (of *Kenyon Dornay Marshall, P.L.L.C.*); *Michael Connelly, Spokane City Attorney*, and *Robert G. Beaumier, Jr., Assistant*; *Steven J. Tucker, Prosecuting Attorney for Spokane County*, and *James P. Emacio, Deputy*; *John G. Wetle, Prosecuting Attorney for Stevens County*, and *Lloyd B. Nickel, Deputy*; and *Paul J. Lawrence* (of *Preston Gates & Ellis, L.L.P.*), for respondents.

*William P. Mallow*, pro se.

*Russell C. Brooks* and *Robin L. Rivett* on behalf of Pacific Legal Foundation, Russell C. Brooks, Ed Tropp, Kira Kuetgens, and KRS Holdings, amici curiae.

*William C. Severson* on behalf of Association of Washington Business and League of Women Voters, amici curiae, and *Michael C. Subit* on behalf of League of Women Voters, amicus curiae.

JOHNSON, J. — This case concerns the constitutionality of Initiative 722 (I-722). We hold I-722 violates the single subject clause of Wash. Const. art. II, § 19 and, therefore, must be voided in its entirety. We affirm the Thurston County Superior Court.

## FACTS

I-722 was presented to the people of Washington State on November 7, 2000, under the following ballot title:

> Shall certain 1999 tax and fee increases be nullified, vehicles exempted from property taxes, and property tax increases (except new construction) limited to 2% annually?

Clerk's Papers at 25. I-722 purported to grant tax relief by nullifying various 1999 tax increases and authorizing a onetime refund, and by changing the method of assessing property taxes, including imposing a two percent cap on property tax increases. I-722 passed, receiving 58 percent approval of the voters.

On November 9, 2000, the first lawsuit challenging the constitutionality of I-722 was filed in Thurston County Superior Court. Within the next few weeks, several additional lawsuits were filed in Thurston County and other counties. Most of the suits filed elsewhere were transferred to Thurston County Superior Court. On November 30, 2000, Judge Christine A. Pomeroy entered an order consolidating all of the I-722 cases before her. On the same day, Judge Pomeroy also entered an order granting a preliminary injunction against the implementation or enforcement of I-722 (preliminary injunction).

The plaintiffs (Respondents in the present action and hereinafter referred to as such in this opinion) were comprised of several counties, cities, and other municipal corporations, as well as several individuals and nonprofit organizations. The State of Washington and Frederick C. Kiga, director of the Department of Revenue, were named as defendants (Appellants in the present action and hereinafter referred to as such in this opinion), as well as certain other counties and county officers. Because it was unclear which local governments would be bound by the preliminary injunction, numerous additional requests for joinder were made. On January 9, 2001, Judge Pomeroy entered an order consolidating an additional lawsuit with the main case and creating two plaintiff classes: (1) all Washington taxing districts; and (2) all Washington counties that wished to join in the litigation. The sponsors of I-722 intervened in the action and participated fully in the superior court proceedings.

The parties filed motions and cross-motions for summary judgment on the class claims and certain interpretive issues, raising issues as to the "facial" constitutionality of

I-722. On February 23, 2001, the motions were argued. That same day, Judge Pomeroy entered an order granting Respondents' motion for summary judgment on the class claims (Ruling). Judge Pomeroy ruled I-722 unconstitutional on four separate constitutional grounds and further ordered a permanent injunction against implementation and enforcement of I-722. On two other constitutional challenges, Wash. Const. art. II, § 19 and art. XI, § 12, Judge Pomeroy upheld I-722's constitutionality; however, that determination had no effect on the I-722 Ruling under the first four constitutional infirmities.

Appellants sought review of Judge Pomeroy's Ruling. The sponsors of I-722 initially filed but later withdrew their appeal, citing financial hardship; the sponsors rely on the State to defend I-722. We granted review of the issues raised by remaining Appellants, Respondents, and amici curiae of both parties.

## ANALYSIS

We begin our analysis by determining whether I-722 violates the single subject clause of Wash. Const. art. II, § 19. In approving an initiative measure, the people exercise the same power of sovereignty as the Legislature when enacting a statute. *Wash. Fed'n of State Employees v. State*, 127 Wn.2d 544, 556, 901 P.2d 1028 (1995). This power is subject to the same constitutional restraints placed upon the Legislature when making laws. *State ex rel. Heavey v. Murphy*, 138 Wn.2d 800, 808, 982 P.2d 611 (1999). Consequently, even though an initiative passes by the majority of the voters, it will be struck down if it runs afoul of Washington's constitution.

In analyzing whether an initiative violates the Washington constitution, we must determine whether the initiative embodies two unrelated subjects in violation of the single subject clause. Article II, section 19 provides: "No bill shall embrace more than one subject, and that shall be expressed in the title." Article II, section 19 applies to

initiatives as well as bills. *Wash. Fed'n of State Employees*, 127 Wn.2d at 551-54. The purpose of the single subject clause is to prohibit the enactment of an unpopular provision pertaining to one subject by attaching it to a more popular provision whose subject is unrelated. *Power, Inc. v. Huntley*, 39 Wn.2d 191, 198, 235 P.2d 173 (1951). When an initiative embodies two unrelated subjects, it is impossible for the court to assess whether either subject would have received majority support if voted on separately. Consequently, the entire initiative must be voided. *Power, Inc.*, 39 Wn.2d at 200.

■■ In making the determination of whether an initiative violates the single subject clause, we first look to the ballot title to determine whether it is general or restrictive. *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 207-10, 11 P.3d 762 (2000). The type of title determines the type of analysis we undertake when reviewing an initiative under article II, section 19. *Amalgamated*, 142 Wn.2d at 205-06. A general title is broad, comprehensive, and generic as opposed to a restrictive title that is specific and narrow. *Amalgamated*, 142 Wn.2d at 207-08, 210. In assessing whether a title is general, it is not necessary that the title contain a general statement of the subject or subjects of an act. *Amalgamated*, 142 Wn.2d at 209. A few well-chosen words, suggestive of the general topic stated, are all that is necessary. *Amalgamated*, 142 Wn.2d at 209 (citing *State ex rel. Scofield v. Easterday*, 182 Wash. 209, 212, 46 P.2d 1052 (1935)).

I-722 contains a general title. As stated previously, the ballot title given to I-722 reads:

> Shall certain 1999 tax and fee increases be nullified, vehicles exempted from property taxes, and property tax increases (except new construction) limited to 2% annually?

Clerk's Papers at 25. While there are some parts of the title that may appear restrictive, when read in its entirety the title broadly encompasses the topic of tax relief.

■ Once an initiative ballot title is identified as being

general, we look to the body of the initiative to determine whether a rational unity among the matters addressed in the initiative exists. An initiative can embrace several incidental subjects or subdivisions and not violate article II, section 19, so long as they are related. In order to survive, however, rational unity must exist among all matters included within the measure and the general topic expressed in the title. *Wash. Fed'n of State Employees*, 127 Wn.2d at 556-57. Only where rational unity exists can we be certain voters were not required to vote for an unrelated subject of which the voters disapproved in order to pass a law pertaining to a subject of which the voters were committed. *See, e.g., Brower v. State*, 137 Wn.2d 44, 969 P.2d 42 (1998) (finding the act embracing two purposes— short-term and long-term funding schemes—constitutional because there was a rational unity between the schemes and the construction of a new stadium). Thus, the existence of rational unity or not is determined by whether the matters within the body of the initiative are germane to the general title and whether they are germane to one another. *Amalgamated*, 142 Wn.2d at 209-10.

For instance, in *Washington Toll Bridge Authority*, we found the title of the act was general and reflected the subject matter of the measure: toll roads. However, we found the act had two purposes: (1) to provide legislation, permanent in character, empowering a state agency to establish and operate all toll roads; and (2) to provide for the construction of a specific toll road linking Tacoma, Seattle, and Everett. *Wash. Toll Bridge Auth. v. State*, 49 Wn.2d 520, 523, 304 P.2d 676 (1956). We concluded the purposes were unrelated and not germane to one another. Particularly problematic was the fact the creation of the state agency was long-term and continuing in nature while the funding provision was a onetime event that was narrow in scope. *Wash. Toll Bridge Auth.*, 49 Wn.2d at 523-24.

Similarly, less than one year ago we found Initiative 695 to have a general title pertaining to tax limitation but found the measure embraced two purposes: (1) to specifi-

cally set license tab fees at $30; and (2) to provide for a continuing method of approving all future tax increases. *Amalgamated*, 142 Wn.2d at 217. We found both the purpose of setting a $30 license tab fee and the purpose of requiring voter approval on future tax increases related to the general topic of limiting taxes. Nevertheless, we held Initiative 695 was void because the purposes were unrelated. We also noted neither purpose was necessary to the implementation of the other. *Amalgamated*, 142 Wn.2d at 217. Like the initiatives in the above cases, we find I-722 also embraces at least two purposes. First, section (1) seeks to nullify various 1999 tax increases and proposes a one-time refund of those taxes. Second, sections (3) through (7) seek to change the method of assessing property taxes, culminating in a two percent cap for property tax increases. Both the tax refund provision and the property tax assessment provision relate to the general topic of tax relief. Therefore, the focus of our next inquiry is whether the two purposes in I-722 are germane to one another.

We find the subjects in I-722 are not germane to one another. The nullification and onetime refund of various 1999 tax increases and monetary charges is unnecessary and entirely unrelated to permanent, systemic changes in property tax assessments. The repeal and refund provision encompasses much more than property taxes. The broad language of the repeal and refund provision effectively implicates utility charges, hospital charges, housing authority rents, city moorage rates, park district admissions, port district cold storage charges, and numerous other "monetary charges." The retroactive refund of those charges is unrelated to the systematic, ongoing changes in property tax assessments contemplated in the remainder of the initiative. Similarly, changing the method of determining property tax does not necessitate the refunding of all 1999 tax increases not approved by voters. Each of these subjects is unrelated to the other.

The kind of logrolling of unrelated measures embodied in I-722 violates the fundamental principle embedded in ar-

ticle II, section 19 and is unconstitutional. I-722 necessarily required the voters who supported one subject of the initiative to vote for an unrelated subject they might or might not have supported. For example, a person who desired systemic changes to future property tax assessments but did not want to fiscally burden cities with the refunding of 1999 tax increases was required to vote for both measures or neither. Similarly, a person who did not own a home or who was otherwise unconcerned with changing methods for assessing property taxes but did desire a refund of other fees was required to vote for both measures or neither. Because the subjects in I-722 are unrelated, voters did not have an opportunity to cast a vote that clearly demonstrated their support for either or both subjects. In order to do so, the two subjects needed to be voted on separately.

We hold I-722 embodies two unrelated subjects in violation of Wash. Const. art. II, § 19. Because we cannot know if either subject of I-722 would have garnered popular support standing alone, we must declare the entire initiative void. In so doing, we do not find it necessary to reach any further issues raised by the parties. The superior court is affirmed.

ALEXANDER, C.J., and SMITH, MADSEN, IRELAND, BRIDGE, CHAMBERS, and OWENS, JJ., concur.

SANDERS, J. (concurring) — Assuming the single subject rule expressed in Wash. Const. art. II, § 19 ("No bill shall embrace more than one subject, and that shall be expressed in the title.") applies to initiatives,[1] I agree this initiative embraces more than a single subject.

The state claims the initiative does not violate the single subject rule because the initiative in fact has only a single subject, i.e., the limitation of taxes. Although the initiative

---

[1] This is likely an unwarranted assumption. *See Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 259-63, 11 P.3d 762 (2000) (Sanders, J., dissenting). However, neither party in this case challenges the applicability of article II, section 19, to initiatives, so that issue is really not before us.

certainly does that, it does something else as well: It purports to exempt from property tax "any legal obligation to pay the portion of property taxes attributable to any increase in value of property (other than for new construction or manufacture) over its 1999 valuation level, plus the lesser of 2% per year or inflation," LAWS OF 2001, ch. 2, § 3(1); as well as a similar exemption for new construction, *id.* § 3(2); and maintenance improvements, *id.* § 4. Although property owners with rapidly appreciating property would no doubt benefit from these exemptions, those whose property did not appreciate as rapidly, or depreciated, would experience a correspondingly higher tax burden. Therefore this feature of the initiative does not limit or reduce taxes, it reallocates taxes, which in my view is a wholly different subject from those provisions of the ordinance which truly do limit taxation.

For these reasons I concur in the judgment of this court that I-722 does not pass constitutional muster.