[Nos. 33227-2-II; 33229-9-II; Division Two. August 29, 2006.] 33230-2-II.

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTINE LOUISE STANNARD, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. THOMAS FRANK DURHAM, *Petitioner*.

THE STATE OF WASHINGTON, *Respondent*, v. CRAIG ALLEN STEVENSON, *Petitioner*.

830

*John S. Stanislay*; and *Linda M. Callahan* (of *Callahan Law*), for petitioners.

*Juelie B. Dalzell, Prosecuting Attorney*, and *John F. Raymond, Deputy*; and *Sonia A. Wolfman*, for respondent.

¶1 ARMSTRONG, J. — Christina Louise Stannard, Thomas Frank Durham, and Craig Allen Stevenson appeal their convictions of illegally hunting black bear using bait, violations of RCW 77.15.245. In upholding the convictions, the Jefferson County Superior Court rejected the defendants' argument that Initiative 655, which outlawed using bait to hunt black bear, violated article II, section 19 of the Washington Constitution by embracing more than one

subject and by failing to express the initiative's subject in its title. We affirm, holding that the initiative deals with one subject, which is fairly expressed in the title.

## FACTS

A. *Initiative 655 and RCW 77.15.245*

¶2 In 1996, Washington voters approved Initiative 655 (I-655). The I-655 ballot title stated: "Shall it be a gross misdemeanor to take, hunt, or attract black bears with bait, or to hunt bears, cougars, bobcat or lynx with dogs?" Clerk's Papers (CP) (Stannard) at 70. The legislature first codified I-655 in former RCW 77.16.360 (1997). Laws of 1997, ch. 1, § 1. The initiative imposed a five-year hunting license revocation upon the first conviction and a permanent revocation for any subsequent conviction under the statute. Laws of 1997, ch. 1, § 1.

¶3 In 2000, the legislature amended RCW 77.16.360 to include two additional exceptions to the prohibition on using dogs for hunting. Laws of 2000, ch. 248. At the same time, the legislature recodified former RCW 77.16.360 (1997) at RCW 77.15.245, to reflect the merger between the former *Departments of Fisheries and Wildlife into a single* agency: the Washington Department of Fish and Wildlife. Laws of 2000, ch. 107, §§ 1, 260.

¶4 In 2001, the legislature reenacted and amended RCW 77.15.245, making technical changes without altering the statute's substance. Laws of 2001, ch. 253, § 31.

B. *The Crime*

¶5 Federal and state law enforcement officers learned that people were using bait to hunt bear on Washington State Department of Natural Resources lands south of the Queets River in western Jefferson County. The officers contacted Christina Stannard, Thomas Durham, Craig

Stevenson, and several others in the area.[1] Concluding that Stannard, Durham, and Stevenson had illegally used bait to hunt black bear, the officers arrested them. The State charged Stannard, Durham, and Stevenson with illegally hunting black bear with bait, contrary to RCW 77-.15.245(1).

## C. *Procedure*

¶6 The district court granted Stannard's, Durham's, and Stevenson's motions to dismiss the criminal charges, ruling that I-655 violated article II, section 19 of the Washington Constitution. Specifically, the district court held that I-655 violated the "single subject rule." CP (Stannard) at 76; CP (Durham) at 96; CP (Stevenson) at 70; *see* WASH. CONST. art. II, § 19 (no bill shall embrace more than one subject, and that shall be expressed in the title). On appeal, the Jefferson County Superior Court reversed the district court, ruling that I-655 satisfied article II, section 19's "single subject" and "subject-in-title" requirements. CP (Stevenson) at 120-21.

¶7 We granted Stannard's, Durham's, and Stevenson's motions for discretionary review.

## ANALYSIS

### I. EFFECT OF AMENDMENTS TO AND RECODIFICATION OF I-655

■ ¶8 The State argues that we need not reach the constitutional question presented here because the legislature cured any constitutional defect when it adopted RCW 77.15.245. The State did not make this argument before the district court or the superior court, and it cites no Washington case addressing this argument. Although we generally resolve cases on nonconstitutional grounds if both constitutional and nonconstitutional issues exist, we de-

---

[1] Stannard, Durham, and Stevenson are the only hunters relevant to this appeal.

834

cline to do so here. *See State v. Speaks*, 119 Wn.2d 204, 207, 829 P.2d 1096 (1992).

¶9 Voters passed I-655 in 1996, and the legislature first codified the initiative under RCW 77.16.360 in 1997. LAWS OF 1997, ch. 1, § 1. In 2000, the legislature amended the statute and recodified it under RCW 77.15.245. LAWS OF 2000, ch. 248; LAWS OF 2000, ch. 107, §§ 260, 275. The defendants committed their violations in July or August 2003. Thus, if the State's argument is correct, the legislature's act of recodifying and amending the initiative in 2000 would bar any constitutional challenge to the initiative by the defendants or anyone else who was first touched by the initiative after 2000. We are unwilling, without supporting Washington authority, to so severely restrict a citizen's right to challenge an initiative on constitutional grounds.

II. CONSTITUTIONALITY OF I-655 AND RCW 77.15.245

¶10 The defendants claim that I-655's title violates the Washington Constitution, article II, section 19, which provides that "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." Br. of Appellant Stevenson at 7; Br. of Appellants Durham & Stannard at 16. Article II, section 19 contains two prohibitions: (1) no bill shall embrace more than one subject (single subject rule) and (2) the bill's title shall express the bill's subject (subject-in-title rule). *Citizens for Responsible Wildlife Mgmt. v. State*, 149 Wn.2d 622, 632, 71 P.3d 644 (2003) (citing *State ex rel. Wash. Toll Bridge Auth. v. Yelle*, 32 Wn.2d 13, 23, 200 P.2d 467 (1948)). A violation of either the single subject or the subject-in-title requirement renders the bill unconstitutional. *Patrice v. Murphy*, 136 Wn.2d 845, 852, 966 P.2d 1271 (1998).

¶11 We presume that statutes enacted through the initiative process are constitutional. *Amalgamated Transit Union Local 587 v. State*, 142 Wn.2d 183, 205, 11 P.3d 762 (2000) (citing *Brower v. State*, 137 Wn.2d 44, 52, 969 P.2d 42 (1998)). A party who challenges a statute on constitutional

grounds must show beyond a reasonable doubt that the statute violates the constitution. *Amalgamated*, 142 Wn.2d at 205 (citing *Belas v. Kiga*, 135 Wn.2d 913, 920, 959 P.2d 1037 (1998)).

¶12 In determining whether an initiative violates article II, section 19, we first consider whether the ballot title is general or restrictive. *City of Burien v. Kiga*, 144 Wn.2d 819, 825, 31 P.3d 659 (2001) (citing *Amalgamated*, 142 Wn.2d at 207-10).

A. *Is I-655's Title General or Restrictive?*

¶13 When a party challenges an initiative's constitutionality under article II, section 19 of the Washington Constitution, we review the initiative's ballot title, not the legislative title. *Citizens*, 149 Wn.2d at 632 (ballot title is the relevant title since it is the ballot title the voters are faced with when voting).

¶14 Initiative drafters may adopt a broad and comprehensive general title, in which case we liberally construe the initiative to embrace any subject within the initiative's body that is reasonably germane to the initiative's title. *See Amalgamated*, 142 Wn.2d at 207. An initiative with a general title may contain several incidental subjects or subdivisions without violating article II, section 19. *Amalgamated*, 142 Wn.2d at 207 (citing *Wash. Fed'n of State Employees v. State*, 127 Wn.2d 544, 556, 901 P.2d 1028 (1995)).

¶15 If initiative drafters adopt a restrictive title that carves out a particular part of a subject for governmental control, we are less liberal in construing the initiative's scope. *Citizens*, 149 Wn.2d at 633 (citing *State ex rel. Wash. Toll Bridge Auth.*, 32 Wn.2d at 26). Thus, we will allow only those initiative provisions that are fairly expressed within the restricted title. *Citizens*, 149 Wn.2d at 633 (citing *State ex rel. Wash. Toll Bridge Auth.*, 32 Wn.2d at 26).

¶16 Stannard and Stevenson argue that I-655's ballot title is restrictive because the title does not contain suffi-

cient examples to "embrace a subject" and it deals only with specific animals and specific hunting methods. Br. of Appellant Stannard at 6. Stevenson argues that the title "restricts the initiative to particular and specific acts [and] not hunting in general." Br. of Appellant Stevenson at 6 (emphasis omitted). The State argues that the ballot title is general because the title "deals with the broad topic of a ban on methods of hunting certain wildlife." Br. of Resp't at 9.

¶17 A general title need not contain a general statement of the subject of an act; rather, " '[a] few well-chosen words, suggestive of the general subject stated, is all that is necessary.' " *Amalgamated*, 142 Wn.2d at 209 (alteration in original) (quoting *State ex rel. Scofield v. Easterday*, 182 Wash. 209, 212, 46 P.2d 1052 (1935)). An initiative with a general title is constitutionally valid if there is a rational unity between the general subject title and the incidental subjects included in the initiative. *Amalgamated*, 142 Wn.2d at 209 (citing *Wash. Fed'n*, 127 Wn.2d at 556). Where a legislative act's title expresses a single general subject, the act may include all matters that are naturally and reasonably connected with the title and all measures that may facilitate accomplishing the title's stated purpose. *Amalgamated*, 142 Wn.2d at 209 (quoting *Kueckelhan v. Fed. Old Line Ins. Co.*, 69 Wn.2d 392, 403, 418 P.2d 443 (1966)).

¶18 By contrast, a restrictive title is " 'one where a particular part or branch of a subject is carved out and selected as the subject of the legislation.' " *Amalgamated*, 142 Wn.2d at 210 (quoting *State v. Broadaway*, 133 Wn.2d 118, 127, 942 P.2d 363 (1997)). A restrictive title expressly limits the scope of the act to that expressed in the title. *Broadaway*, 133 Wn.2d at 127. Generally, courts more readily find violations of the single-subject rule where an initiative's title is restrictive. *Amalgamated*, 142 Wn.2d at 211.

¶19 In *State v. Thorne*, 129 Wn.2d 736, 746, 921 P.2d 514 (1996), our Supreme Court considered the following ballot title: "Shall criminals who are convicted of 'most serious

offenses' on three occasions be sentenced to life in prison without parole?" It held that the language was restrictive because "it refers only to criminals who have committed serious offenses on three occasions." *Thorne*, 129 Wn.2d at 758.

¶20 In *Amalgamated*, the court held that the title, "[s]hall voter approval be required for any tax increase, license tab fees be $30 per year for motor vehicles, and existing vehicle taxes be repealed," was general. *Amalgamated*, 142 Wn.2d at 193. The court explained that although the initiative's title "seem[ed] in part restrictive, i.e., the part which says that '[s]hall . . . license tab fees be $30 per year for motor vehicles[,]' the balance of the title broadens its scope." *Amalgamated*, 142 Wn.2d at 216-17 (some alterations in original). Accordingly, the court held that the initiative's title was general. *Amalgamated*, 142 Wn.2d at 217.

¶21 In *Kiga*, the court considered the title, "[s]hall certain 1999 tax and fee increases be nullified, vehicles exempted from property taxes, and property tax increases (except new construction) limited to 2% annually?" *Kiga*, 144 Wn.2d at 825. Again the court held that "[w]hile there are some parts of the title that may appear restrictive, when read in its entirety the title broadly encompasses the topic of tax relief." *Kiga*, 144 Wn.2d at 825. Accordingly, the court ruled that the initiative had a general title. *Kiga*, 144 Wn.2d at 825.

¶22 And in *Citizens*, the initiative title read, "[s]hall it be a gross misdemeanor to capture an animal with certain body-gripping traps, or to poison an animal with sodium fluoroacetate or sodium cyanide?" *Citizens*, 149 Wn.2d at 632. In holding that the initiative's title was general, the court stated that while the initiative's title contained specific topics, those topics were "merely incidental to the general topic reflected in the title—a ban on methods of trapping and killing animals." *Citizens*, 149 Wn.2d at 636 (expressing the court's own formulation of the initiative's "general topic" and acknowledging that "body-gripping traps

and pesticides" were "specific topics" within the initiative's general title). The court found unpersuasive Citizens' argument that the title was restrictive because it carved out two specific subjects: trapping with body-gripping traps and killing with poisons. *Citizens*, 149 Wn.2d at 636.

¶23 We hold that I-655's title is general. I-655 prohibits taking, hunting, and attracting black bears with bait. The initiative also prohibits using dogs to hunt bears, cougars, bobcats, and lynx. Similar to the initiative's title in *Citizens*, I-655's title deals with banning certain methods of hunting animals. *See Citizens*, 149 Wn.2d at 636 (holding that the title "[s]hall it be a gross misdemeanor to capture an animal with certain body-gripping traps, or to poison an animal with sodium fluoroacetate or sodium cyanide" was general). It is arguably more restrictive than the *Citizens'* initiative because it limits the targeted animals—bears, cougars, bobcats, and lynx. But it is arguably less restrictive than *Citizens* in the specific hunting methods prohibited. *Citizens* prohibited body-gripping traps and two specific poisons. I-655 prohibits using any kind of bait to hunt bears and any kind of dog to hunt bears, cougars, bobcats, and lynx. More importantly, the specific topics named in the title, as in *Citizens*, are "merely incidental to the general topic reflected in the title—a ban on methods of trapping and killing animals." *Citizens*, 149 Wn.2d at 636. We conclude that the superior court did not err in ruling that I-655 has a general title.

### B. *Single Subject Rule*

¶24 An initiative may also violate article II, section 19 if the measure's language requires voters to vote for something they may not want in order to get something they want.[2] *Citizens*, 149 Wn.2d at 632 (citing *Amalgamated*, 142 Wn.2d at 212). When an initiative has a general title, we look to the body of the initiative to determine

---

[2] This practice is known as "logrolling." *See Amalgamated*, 142 Wn.2d at 212 n.5.

whether a rational unity exists among the matters addressed in the initiative. *Kiga*, 144 Wn.2d at 825-26. "An initiative can embrace several incidental subjects or subdivisions and not violate article II, section 19, so long as [the incidental subjects] are related." *Kiga*, 144 Wn.2d at 826. But to meet constitutional standards, the initiative's incidental subjects must rationally relate to one another and to the title's general topic. *Citizens*, 149 Wn.2d at 636-37.

¶25 We first ask whether a rational unity exists between I-655's general subject and its incidental subdivisions. *Citizens*, 149 Wn.2d at 636 (quoting *Kueckelhan*, 69 Wn.2d at 403). I-655's general subject is a ban on certain methods of hunting particular animals. The initiative's incidental subjects are hunting black bears with bait and hunting bears, cougars, bobcats, and lynx with dogs. Both incidental subjects rationally relate to the initiative's general subject of regulating methods of hunting certain animals. *See Citizens*, 149 Wn.2d at 636 (the initiative's incidental subjects prohibiting the use of body-gripping traps and pesticides each bear a rational relationship to regulations of methods for trapping and killing animals).

¶26 We next ask whether I-655's incidental subjects rationally relate to one another. *Citizens*, 149 Wn.2d at 637 (citing *Kiga*, 144 Wn.2d at 826). Stannard and Stevenson argue that I-655 contains multiple unrelated subjects, namely: (1) taking, hunting, or attracting a black bear with bait; (2) hunting bears with dogs; (3) hunting cougars with dogs; (4) hunting bobcats with dogs; and (5) hunting lynx with dogs. They also argue that I-655 violates the single subject rule because the initiative forced voters wanting to prohibit hunting black bear with bait to also vote to prohibit cougar hunting with dogs or vote to prohibit neither.

¶27 In *Washington Toll Bridge Authority v. State*, 49 Wn.2d 520, 522, 304 P.2d 676 (1956), the court considered a legislative act containing numerous incidental subjects.[3]

---

[3] The Act's full title is:

" 'AN ACT to facilitate vehicular traffic in the state of Washington by providing for the acquisition, construction, improvement, extension, reconstruction, mainte-

In holding that the act violated article II, section 19, the court noted that the act contained two purposes, one that was broad and continuing in effect and one relating to a narrow onetime event. *Wash. Toll Bridge Auth.*, 49 Wn.2d at 524-25. Similarly, the *Amalgamated* court held that the initiative violated the single subject rule because it contained provisions with different purposes: to set license tab fees at $30 and to provide a continuing method of approving all future tax increases. *Amalgamated*, 142 Wn.2d at 217. The court based its holding in *Amalgamated*, in part, on the *Washington Toll Bridge Authority* rationale that the initiative violated article II, section 19 because its incidental subjects had both narrow, immediate effects and broad, long term purposes.

¶28 In *Citizens*, the court upheld the validity of an initiative banning two separate methods of trapping and killing animals. *Citizens*, 149 Wn.2d at 632. In doing so, the court distinguished the *Amalgamated* and *Kiga* initiatives, reasoning that the *Citizens'* initiative contained two incidental subjects that were similar in scope. *Citizens*, 149 Wn.2d at 638-39.

¶29 Similar to the incidental subjects in *Citizens*, the incidental subjects here ban different specific methods of hunting different animals; they differ only in the specific prohibited hunting methods and the targeted animals. We find no meaningful difference between the incidental subjects in *Citizens* and the incidental subjects here. Thus, we agree with the superior court that the incidental subjects are sufficiently related to satisfy article II, section 19. *See Kiga*, 144 Wn.2d at 826 (an initiative can embrace several

---

nance, repair and operation of toll road projects by the Washington toll bridge authority; defining the powers and duties of the Washington toll bridge authority, cities, towns and other political subdivisions and agencies of the state with respect to such toll road projects; specifically authorizing and establishing the location of the Tacoma-Seattle-Everett toll road project and pledging a portion of the excise tax on motor vehicle fuels to assist the financing thereof.' "

*Wash. Toll Bridge Auth.*, 49 Wn.2d at 522 (quoting LAWS OF 1955, ch. 268, at 1092).

incidental subjects or subdivisions and not violate article II, section 19 so long as they are related); *see also Citizens*, 149 Wn.2d at 639 (capturing animals with certain body-gripping traps and poisoning animals with specific poisons are germane to one another).

## C. *Subject in Title Rule*

¶30 Under article II, section 19 of the Washington Constitution, an initiative's title must express its subject. This provision ensures that the public has notice of the initiative's contents. *Citizens*, 149 Wn.2d at 639 (citing *Amalgamated*, 142 Wn.2d at 217). But to comply with the provision, the initiative's title need not be an index to the contents, nor must it provide details of the measure. *Citizens*, 149 Wn.2d at 639 (citing *Amalgamated*, 142 Wn.2d at 217).

¶31 Stannard and Stevenson argue that I-655 violates the subject-in-title rule because the initiative's title expresses a criminal penalty but fails to mention the corresponding administrative penalty. In addition to making hunting black bears with bait and hunting bears, cougars, bobcats, and lynx a gross misdemeanor, I-655 provides for a five-year hunting license revocation for a first violation and a permanent revocation for subsequent violations. RCW 77.15.245. Stannard and Stevenson cite *State v. Clark*, 43 Wash. 664, 86 P. 1067 (1906), and *State v. Thomas*, 103 Wn. App. 800, 14 P.3d 854 (2000), to support their position. Both cases are distinguishable.

¶32 In *Clark*, the court held that the title "[a]n act for the protection of builders and declaring an emergency" did not satisfy the subject in title rule because the act punished the "very person whom its title purports to protect." *Clark*, 43 Wash. at 664, 666. The legislature intended the act to protect building owners against labor and material liens by independent contractors. *Clark*, 43 Wash. at 666. In striking down the act, the court noted that "[a]n act for the protection of builders . . . does not convey notice to contractors that they are to be punished, or to the owners of

buildings that they are to be protected." *Clark*, 43 Wash. at 667.

¶33 In *Thomas*, we held that the title, " '[an act] [r]elating to insurance fraud,' " did not sufficiently notify voters of the act's substantive effect on the Criminal Profiteering Act, chapter 9A.82 RCW. *Thomas*, 103 Wn. App. at 809 (quoting LAWS OF 1995, ch. 285, at 1153). Accordingly, we found that the act's title violated article II, section 19's subject-in-title rule. *Thomas*, 103 Wn. App. at 809. Part of the act repealed a sunset provision in the Criminal Profiteering Act, which made it a crime to lead organized crime. *Thomas*, 103 Wn. App. at 809-10. We reasoned that the title, "[an act] [r]elating to insurance fraud," gave no notice that the initiative affected the Criminal Profiteering Act. *Thomas*, 103 Wn. App. at 809-10.

¶34 In *Citizens*, the court had to resolve whether the title "[s]hall it be a gross misdemeanor to capture an animal with certain body-gripping traps, or to poison an animal with sodium fluoroacetate or sodium cyanide" put the average voter on notice that the initiative would also penalize those who illegally obtained fur pelts. *Citizens*, 149 Wn.2d at 632. The court found it illogical for the average voter to assume that a ban on certain animal traps would not affect the illegal pelt trade or its methods of obtaining furs. *Citizens*, 149 Wn.2d at 640. Thus, concluded the court, the title's ban on certain methods of trapping or killing animals put the average voter on notice of the initiative's effect on the illegal fur trade. *Citizens*, 149 Wn.2d at 640.

¶35 Again we find *Citizens* controlling. I-655 proposed a ban on certain methods of hunting certain animals. A title complies with the subject-in-title requirement if it gives notice that "would lead to an inquiry into the body of the act or indicates the scope and purpose of the law to an inquiring mind." *Citizens*, 149 Wn.2d at 639 (citing *Amalgamated*, 142 Wn.2d at 217). Applying *Citizens*' analysis, I-655's title would lead a voter to inquire further as to the consequences of engaging in the prohibited conduct. *See Citizens*, 149 Wn.2d at 640. Specifically, the voter would understand from

I-655's title that penalties, including license suspensions, would likely follow from hunting black bears with bait or hunting bears, cougars, bobcats, or lynx using dogs.

¶36 Finally, we return to our discussion of general or restrictive title. Even if we consider the title to be restrictive, our result would be the same. In *Citizens*, the court concluded that

> even if we assume, arguendo, that the title is restrictive, it is still a constitutionally valid title. The subjects of trap and pesticide use for animals are related so as not to be the individual, disjointed subjects that Citizens contend they are. The provisions in the initiative governing the types of traps and pesticides that may be used are fairly within the subject expressed in the title.

*Citizens*, 149 Wn.2d at 636. The court concluded that "whether general or restrictive, the title of I[nitiative]-713 does not violate the single subject rule or the subject in title rule of article II, section 19." *Citizens*, 149 Wn.2d at 640.

¶37 Because I-655's incidental subjects rationally relate to one another and to the initiative's general subject, and because I-655's title apprises the average voter that the initiative's body relates to methods of hunting certain animals, the initiative violates neither the single subject nor subject-in-title rules of article II, section 19.

¶38 Affirmed.

VAN DEREN, A.C.J., and HUNT, J., concur.