14 P.3d 854 (2000)
103 Wash.App. 800
STATE of Washington, Respondent,
v.
Kiley THOMAS, Appellant.
No. 24962-6-II.
Court of Appeals of Washington, Division 2.
December 21, 2000.
*857 R. A. Lewis, Knapp, O'Dell & Lewis (Court Appointed), Camas, for Appellant.
Mark Ellis Beam, Clark County Pros. Atty. Office, Vancouver, for Respondent. *855
*856 BRIDGEWATER, J.
Kiley Thomas appeals his convictions of leading organized crime and three counts of conspiracy to deliver marijuana. First, we hold that the Criminal Profiteering Act, chapter 9A.82 RCW, was repealed in part by RCW 9A.82.903 in July of 1995. RCW 9A.82.903, included in the 1985 version of the Criminal Profiteering Act, provided for the automatic repeal of the entire Criminal Profiteering Act in 1995. Before July 1995, the legislature attempted to eliminate this anticipated repeal of chapter 9A.82 RCW by including a section repealing RCW 9A.82.903, the termination provision,[1] in a bill entitled "AN ACT Relating to insurance fraud" (the Act).
This attempt by the legislature to continue the life of the Criminal Profiteering Act by repealing that single provision, RCW 9A.82.903, was unconstitutional because it violated art. II, § 19 of the Washington Constitution by: (1) not expressing the subject of the repealer in the title, and (2) embracing more than one subject. Therefore, Thomas's conviction for leading organized crime, a violation of RCW 9A.82.060, must be reversed and dismissed with prejudice. Second, we hold that the evidence supports Thomas's convictions for conspiracy and that proper jury instructions were given. Third, we hold that, upon resentencing, the school bus stop enhancement does not apply to Thomas's conspiracy convictions. Therefore, we reverse in part, affirm in part, and remand for resentencing.
In 1998, the State charged Thomas with leading organized crime (Count I) by intentionally organizing, managing, directing, supervising, or financing three or more persons with intent to engage in criminal profiteering activity.[2] The information defined "criminal profiteering activity" as "the delivery and/or possession with intent to deliver a controlled substance, to wit: Marijuana[.]" Clerk's Papers at 5. The State also charged Thomas with three counts of conspiracy to deliver a controlled substance and/or possess with intent to deliver a controlled substance for conspiring with three individuals, Perry, Buckeye, and Ross.[3]
The jury convicted Thomas on all four counts and made a special finding that the offenses occurred within the 1,000 foot perimeter of a school bus route stop, which allows for a sentencing enhancement under RCW 69.50.435(a). The trial court sentenced Thomas within the standard range, with no enhancements. The trial court merged the three counts of conspiracy to deliver marijuana into the conviction on Count I, leading organized crime.
Because the facts underlying Thomas's convictions are not pertinent to the published portion of our opinion concerning his conviction on Count I and the partial repeal of the Criminal Profiteering Act, we discuss the facts in the unpublished portion of our opinion concerning Thomas's remaining conspiracy convictions. We first turn to Thomas's assignment of error regarding his conviction on Count I.

Single Subject Requirement
Thomas asserts that he cannot be convicted of criminal profiteering because the termination provision, included in the 1985 version of the Criminal Profiteering Act and codified at RCW 9A.82.903, repealed the entire Criminal Profiteering Act in 1995.
In 1984, the legislature enacted chapter 9A.82 RCW as the "Washington State Racketeering *858 Act" and modeled it after the federal RICO statute[4] to combat organized crime.[5] This legislation was scheduled to take effect July 1, 1985.[6] But before it took effect,[7] the 1985 legislature renamed it the "Criminal Profiteering Act."[8] The 1985 version of chapter 9A.82 RCW contained significant changes to the original act,[9] including a ten-year termination provision to the entire Criminal Profiteering Act effective July 1, 1995.[10]
The Criminal Profiteering Act defined the following crime:
(1) A person commits the offense of leading organized crime by: (a) intentionally organizing, managing, directing, supervising, or financing any three or more persons with the intent to engage in a pattern of criminal profiteering activity[.][11]
The termination provision provided in part:
The following acts or parts of acts as they now exist or are hereafter amended are each repealed effective July 1, 1995.[[12]]
In 1995, the legislature attempted to repeal RCW 9A.82.903 as part of an act entitled "AN ACT Relating to insurance fraud." Thomas argues that the repeal of RCW 9A.82.903 was unconstitutional because the legislature violated the Washington State Constitution, art. II, § 19 by including its repeal in this Act.
The title and table of contents to the Act read as follows:
AN ACT Relating to insurance fraud; amending RCW 48.01.030, 48.18.460, 48.30.210, 48.30.220, 48.50.010, 48.50.020, 48.50.030, 48.50.040, 48.50.075, 48.80.020, 2.48.180, 9.12.010, 9A.72.010, 9A.72.030, 9A.76.020, 9A.82.010, and 18.130.190; reenacting and amending RCW 9.94A.320; adding a new section to chapter 42.17 RCW; adding a new section to chapter 9A.68 RCW; adding a new section to chapter 9A.76 RCW; adding a new chapter to Title 48 RCW; creating a new section; repealing RCW 9.91.090, 9A.82.903, 48.50.060, 48.50.080, and 49.44.070; prescribing penalties; providing an effective date; and declaring an emergency.[[13]]
The emphasized portion reflects the only reference to the termination provision in the Act's introductory paragraph. And the only reference to the termination provision in the body of the Act was contained in § 37. This section provided in relevant part:

New Section. Sec. 37. The following acts or parts of acts are each repealed:
. . . .
(2) RCW 9A.82.903 and 1985 c455 s 22.[[14]]
Article II, § 19 of the Washington Constitution provides: "No bill shall embrace more than one subject, and that shall be expressed in the title." Const. art. II, § 19. This section "serves to protect serious constitutional *859 interests." Patrice v. Murphy, 136 Wash.2d 845, 851, 966 P.2d 1271 (1998). The purposes of this constitutional mandate are three-fold:
(1) to protect and enlighten the members of the legislature against provisions in bills of which the titles give no intimation;
(2) to apprise the people, through such publication of legislative proceedings as is usually made, concerning the subjects of legislation that are being considered; and
(3) to prevent hodge-podge or log-rolling legislation.
Patrice, 136 Wash.2d at 852, 966 P.2d 1271 (citing State ex rel. Wash. Toll Bridge Auth. v. Yelle, 32 Wash.2d 13, 24, 200 P.2d 467 (1948)). See also State v. Broadaway, 133 Wash.2d 118, 124, 942 P.2d 363 (1997) (citing State v. Thorne, 129 Wash.2d 736, 757, 921 P.2d 514 (1996); Washington Fed'n of State Employees v. State, 127 Wash.2d 544, 552, 901 P.2d 1028 (1995)). We liberally construe art. II, § 19 so as to sustain the validity of the legislative enactment. Washington Fed'n of State Employees, 127 Wash.2d at 555, 901 P.2d 1028.
Our Supreme Court has interpreted art. II, § 19 as two separate prohibitions: "(1) No bill shall embrace more than one subject; and (2) the subject of every bill shall be expressed in the title." Patrice, 136 Wash.2d at 852, 966 P.2d 1271; State ex rel. Toll Bridge Auth., 32 Wash.2d at 23, 200 P.2d 467. Violation of either the subject or the title requirement alone is sufficient to render the relevant bill provisions unconstitutional. Patrice, 136 Wash.2d at 852, 966 P.2d 1271. We first address whether the subject of the bill is expressed in the Act's title.
A. Subject-in-Title Rule
In general, a legislative title is constitutionally sufficient if it "gives such notice as should reasonably lead to an inquiry into the body of the act itself, or indicates, to an inquiring mind, the scope and purpose of the law." State ex rel. Toll Bridge Auth., 32 Wash.2d at 26, 200 P.2d 467; Patrice, 136 Wash.2d at 853, 966 P.2d 1271. A legislative title can be either general or restrictive. Thorne, 129 Wash.2d at 758, 921 P.2d 514; State ex rel. Toll Bridge Auth., 32 Wash.2d at 26, 200 P.2d 467. A general title is broad rather than narrow. Gruen v. State Tax. Comm'n, 35 Wash.2d 1, 22, 211 P.2d 651 (1949), overruled on other grounds by State ex rel. Wash. State Fin. Comm. v. Martin, 62 Wash.2d 645, 384 P.2d 833 (1963). Where the title of the act is general and comprehensive, we liberally construe its subject to determine whether it embraces the subject of all the provisions expressed within the act. State ex rel. Toll Bridge Auth., 32 Wash.2d at 26, 200 P.2d 467.[15]
A restrictive title, on the other hand, "is one where a particular part or branch of a subject is carved out and selected as the subject of the legislation." Broadaway, 133 Wash.2d at 127, 942 P.2d 363 (citing Gruen, 35 Wash.2d at 23, 211 P.2d 651). A restrictive title is "narrow," as opposed to broad, and it is of specific rather than generic import. Broadaway, 133 Wash.2d at 127, 942 P.2d 363.[16] A restrictive title will not be liberally regarded and provisions not within its subject are not given force. State ex rel. Toll Bridge Auth., 32 Wash.2d at 26, 200 P.2d 467.
The State argues that the reference to the termination provision, RCW 9A.82.903, in the Act's introductory paragraph meets the requirements of art. II, § 19. The State misreads the "title" of the Act. "[A] mere reference to a section in the *860 title of an act does not state a subject." Fray v. Spokane County, 134 Wash.2d 637, 654-55, 952 P.2d 601 (1998) (quotation omitted). The title relevant to the art. II, § 19 inquiry is the word, phrase, or phrases following "AN ACT Relating to ..." and preceding the first semicolon.[17]See, e.g., Fray, 134 Wash.2d at 655, 952 P.2d 601; Patrice, 136 Wash.2d at 853, 966 P.2d 1271.[18] In other words, for purposes of our inquiry, we look to the narrative description, "AN ACT Relating to insurance fraud[,]" not to the ministerial recital of the sections of the bill. See Sorenson v. Kittitas Reclamation Dist., 70 Wash. 528, 531, 127 P. 102 (1912) (stating "[t]he enumeration of the numbers of the sections in the title of the amendatory act is unnecessary and may be treated as surplusage").
The title "AN ACT Relating to insurance fraud" is sufficiently comprehensive to cover all subjects related to fraud in the insurance industry. But we find that the title "AN ACT Relating to insurance fraud" is not sufficient to notify members of the legislature and the public of the Act's substantive effect on the Criminal Profiteering Act.
Our Supreme Court has not hesitated to hold as unconstitutional the portions of amendatory acts whose subject matter is not reflected within the title. In Petroleum Lease Properties Company v. Huse, our Supreme Court held that an act titled "AN ACT providing for the regulation and supervision of the issuance and sale of securities to prevent fraud in the sale thereof" did not provide notice of the legislature's purpose to bring oil and gas leases within the operation of the securities act. Petroleum Lease, 195 Wash. 254, 260, 80 P.2d 774 (1938). In DeCano v. State, the court held that the title of the act did not signal that a new definition of "aliens" brought a new class of persons traditionally not viewed in the law as "aliens" within the purview of the act. DeCano, 7 Wash.2d at 630, 110 P.2d 627. In Fray, our Supreme Court declared the statute unconstitutional because the title did not provide fair notice to the legislature and the specific parties most impacted by the legislation of the substantive consequences of the bill. Fray, 134 Wash.2d at 655, 952 P.2d 601. When declaring the statutory provisions unconstitutional in Patrice, our Supreme Court again applied this standard to find it "determinative that the title [of the act] does not signal a reader to the hidden effect of the amendment's enactment[.]" Patrice, 136 Wash.2d at 855, 966 P.2d 1271. Here, it is determinative that the title "AN ACT Relating to insurance fraud" does not inform even the most intelligent, astute reader that the effect of the bill is to continue the life of the Criminal Profiteering Act and to continue to criminalize leading organized crime.
To illustrate even more fully that the title of the Act violates art. II, § 19's purpose of providing notice to members of the legislatare and the public, we have also reviewed the Act's legislative history. We find no reference noting that the effect of the Act would keep the Criminal Profiteering Act alive. No committee reports or discussions on the House and Senate floors refer to this effect of the Act.[19] Nor does the final 1995 legislative report mention that the effect of the 1995 Act would repeal the termination provision of the Criminal Profiteering Act.[20]
The State claims in its brief that when RCW 9A.82.903 was enacted: "The legislature had created a period in which to observe the effectiveness of the Criminal Profiteering law [sic] and did not want this law to continue without some future scrutiny." Respondent's Brief at 14. Then, the State makes the unsupported assertion that: "Apparently the legislature was satisfied with the Criminal Profiteering law [sic] and desired it to *861 remain in effect." Respondent's Brief at 14. But this is not supported by the legislative history, which does not show that the legislature reviewed the Criminal Profiteering Act in order to determine its effectiveness and whether it should remain law. The limited reference to the termination provision's code number in both the Act's introductory title and § 37(2) provides inadequate notice to both the public and legislators of the effect of its 1995 repeal.
Therefore, the legislative title does not signal that criminal profiteering, based upon a pattern of criminal conduct of any of the crimes enumerated within former 9A.82.010(14) (1995) that are unrelated to insurance fraud fall within the subject of the Act. The fact that the Act's introductory paragraph references the repeal of RCW 9A.82.903 does not give even the most alert, astute reader notice that this affects the entire Criminal Profiteering Act. Thus, the Act's title does not fairly apprise the legislature and public of the substantive consequences of the Act, and it violates the subject-in-title mandate of art. II, § 19.
B. Single Subject Requirement
We next examine whether the Act embraces more than a single subject, and, thus, violates the second requirement of art. II, § 19. Where the title of the act is general and comprehensive, all our constitution requires is a "rational unity" between the general subject of the title and the incidental subdivision. Broadaway, 133 Wash.2d at 127, 942 P.2d 363 (citations omitted); Boot, 130 Wash.2d at 567, 925 P.2d 964 (citing Washington Fed'n, 127 Wash.2d at 556, 901 P.2d 1028). See also State v. Acevedo, 78 Wash.App. 886, 890, 899 P.2d 31 (1995), review denied, 128 Wash.2d 1014, 911 P.2d 1343 (1996). We do not find, however, a rational unity between the entire Criminal Profiteering Act and "AN ACT Relating to insurance fraud."
Here, the legislative purpose of the Act reads: "The business of insurance is one affected by the public interest, requiring that all persons be actuated in good faith, abstain from deception, and practice honesty and equity in all insurance matters."[21] Clearly, a provision whose effect is to continue to criminalize profiteering based on a pattern of crimes unrelated to the insurance industry is not rationally related to the subject of insurance fraud. Although the Act amended former RCW 9A.82.010(14) (1995) to include a pattern of trafficking in insurance claims, bribery by insurance agents of claimants, or false health care claims in its definition of "criminal profiteering,"[22] the Act also had the effect of continuing to criminalize criminal profiteering based upon any one of the other numerous crimes included within the definition. These underlying felonies encompass an array of criminal conduct including murder, theft, child buying, money laundering, promoting pornography, or delivery or possession with intent to deliver a controlled substancethe crime charged in the instant case. The crime of "criminal profiteering" based upon a pattern of commission of these felonies is not rationally related to insurance fraud.
And the Criminal Profiteering Act is not even historically related to the subject of insurance fraud because the original Criminal Profiteering Act of 1985 did not contain any provisions relating to insurance fraud.[23] Moreover, if the legislature attempted to include the entire Criminal Profiteering Act in this bill, that would have plainly violated the constitutional mandate. Repealing the termination provision is not substantively different from including the entire Criminal Profiteering Act in the bill.
The legislature could have passed separate narrow legislation that simply repealed the termination provision, RCW 9A.82.903. Some legislative bills have consisted entirely of repealers. See, e.g., Lau v. Nelson, 89 Wash.2d 772, 575 P.2d 719 (1978) (analyzing prospective application of Laws of 1974, ch. 3, "AN *862 ACT Relating to motor vehicles," which consisted of one section with three repealers). Alternatively, the legislature could have included the repealer as part of more general legislation. See, e.g., Wash. State Legislature v. Lowry, 131 Wash.2d 309, 931 P.2d 885 (1997) (discussing partial veto of three repealers in Laws of 1994, ch. 143, "AN ACT Relating to milk and milk products," which included hundreds of sections, one of which contained 103 repealers); State v. Howard, 106 Wash.2d 39, 45, 722 P.2d 783 (1985) (holding that title "AN ACT Relating to the amendment or repeal of statutes superseded by court rule" was sufficient to meet art. II, § 19 subject requirement). Our legislature did none of these here.
We do not find rational unity between the Criminal Profiteering Act and "AN ACT Relating to insurance fraud" such that the Criminal Profiteering Act falls within this general subject. The Act encompassed more than the subject of insurance fraud. Thus, this attempt to repeal the termination provision in order to maintain the Criminal Profiteering Act violates the constitutional mandate that a bill shall not encompass more than a single subject.
C. Severability
If laws are enacted in violation of art. II, § 19, the courts "will not hesitate to declare them void." Washington Toll Bridge Auth., 32 Wash.2d at 24, 200 P.2d 467; see also Fray, 134 Wash.2d at 654-55, 952 P.2d 601; Patrice, 136 Wash.2d at 855, 966 P.2d 1271. Violation of either the subject-in-title mandate or the single subject requirement is sufficient to render the Act unconstitutional under art. II, § 19. Patrice, 136 Wash.2d at 852, 966 P.2d 1271. We have held that § 37(2) of the Act violated both requirements as it relates to crimes that fall outside the title's single subject: insurance fraud. But the sections of a legislative enactment which properly relate to the single subject of the title may remain law:
"[T]he Constitution does provide that if only one subject is embraced in the title, then any subject not expressed in the title that is not embraced in the body of the act, may be rejected, and the part that is expressed in the title be allowed to stand[.]"
Patrice, 136 Wash.2d at 855, 966 P.2d 1271 (citing Power, Inc. v. Huntley, 39 Wash.2d 191, 200, 235 P.2d 173 (1951)). Thus, where the proposed legislation with a single subject title contains multiple subjects, those provisions not encompassed within the title are invalid but the remainder is constitutional if: (1) the objectionable portions may be severed such that a court can presume the enacting body would have enacted the valid portion without the invalid portion; and (2) elimination of the invalid part would not render the remainder of the act incapable of accomplishing the legislative purpose. Broadaway, 133 Wash.2d at 128, 942 P.2d 363.[24] In short, when an act contains provisions not fairly within the single subject of its title, such provisions are void. Power, 39 Wash.2d at 200, 235 P.2d 173. See also Price v. Evergreen Cemetery Co. of Seattle, 57 Wash.2d 352, 354, 357 P.2d 702 (1960).
We apply this rule to this case. Thus, (1) the provisions of "AN ACT Relating to insurance fraud" that relate to insurance fraud are not void under the constitutional provision of art. II, § 19; and (2) the Criminal Profiteering Act is in effect, at least for today, only so far as it concerns "insurance fraud." This is so because the added definitions of criminal profiteering specifically related to insurance fraud[25] and the repeal of the termination provision are within the legislative purpose of the Act. There is a rational unity to include the repeal of the termination provision of the Criminal Profiteering Act as it concerns insurance fraud within a legislative chapter relating to insurance fraud. Therefore, the repeal of the termination provision, RCW 9A.82.903, was constitutional as it relates to insurance fraud. *863 This has the effect of narrowing the Criminal Profiteering Act solely to insurance fraud.[26]
Because the legislature included the repeal of the termination provision of the Criminal Profiteering Act within "AN ACT Relating to insurance fraud," we hold the attempted repeal of RCW 9A.82.903 unconstitutional as far as "criminal profiteering" based upon a pattern of crimes unrelated to insurance fraud. Therefore, RCW 9A.82.903 repealed these portions of the Criminal Profiteering Act on July 1, 1995, and these portions were not in effect when Thomas committed the acts leading to the charge of leading organized crime under former RCW 9A.82.010(14)(p) (1995), former RCW 9A.82.010 (15) (1995), and RCW 9A.82.060. And because we hold that the 1995 repeal of RCW 9A.82.903 was unconstitutional under art. II, § 19 as it relates to the crimes charged in Count I, we need not reach the constitutionality of the Act under art. II, § 37, nor reach Thomas's other assignments of error as to Count I. Therefore, we reverse Thomas's conviction on Count I and dismiss it with prejudice.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
MORGAN, P.J., and WANG, J.P.T., concur.
NOTES
[1] For purposes of clarity in this opinion, we refer to the repealer, RCW 9A.82.903 (Laws of 1985, ch. 455, § 22), as a "termination provision," so as not to confuse it with the attempted repeal of this code provision in Laws of 1995, ch. 285, § 37(2).
[2] Former 9A.82.010(14)(p) (1995), Former RCW 9A.82.010(15) (1995), and RCW 9A.82.060(1)(a). Laws of 1999, ch. 143, § 40 put the definitions in RCW 9A.82.010 in alphabetical order. The events leading up to the crimes charged took place in 1997. We therefore discuss the version of the Criminal Profiteering Act in effect at that time.
[3] RCW 69.50.401(a), RCW 69.50.407 & RCW 69.50.435(a).
[4] The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961-1968 (1994 ed. & Supp IV).
[5] 1984 Final Legislative Report, 48th Wash. Leg. Reg. Sess. at 197.
[6] Former RCW 9A.82.901 (Laws of 1984, ch. 270, § 21).
[7] The bill delayed the effective date of the profiteering lien provisions until July 1, 1986. Former RCW 9A.82.901 (Laws of 1985, ch. 455 § 13-17). The bill provided that the 1985 amendments, new sections, and the remaining sections of the 1984 racketeering act would all take effect July 1, 1985. Former RCW 9A.82.901.902 (Laws of 1985, ch. 455, § 20).
[8] Former RCW 9A.82.001 (Laws of 1985, ch. 455, § 1).
[9] For example, crimes that were not felonies under Washington law were removed from the definitions of crimes constituting criminal profiteering, and first and second degree assault along with the crime of collection of an unlawful debt were added. Former RCW 9A.82.010(4) (Laws of 1985, ch. 455 § 2). See also 1985 Final Legislative Report, 49th Wash. Leg. Reg. Sess. at 140-141.
[10] Codified at RCW 9A.82.903 (Laws of 1985, ch. 455, § 22).
[11] Former RCW 9A.82.060 (Laws of 1985, ch. 455 § 7).
[12] Former RCW 9A.82.903 (Laws of 1985 ch. 455 § 22) (emphasis ours).
[13] Laws of 1995, ch. 285 (emphasis ours).
[14] Laws of 1995, ch. 285, § 37(2) (emphasis ours).
[15] Examples of general titles include: "An Act Relating to violence prevention," In Re Boot, 130 Wash.2d 553, 566, 925 P.2d 964, 971 (1996); "An Act Relating to Community Colleges," Wash. Educ. Ass'n v. State, 97 Wash.2d 899, 906-07, 652 P.2d 1347 (1982); "AN ACT Relating to industrial insurance," Wash. State Sch. Dirs. Ass'n v. Dep't of Labor & Indus., 82 Wash.2d 367, 371, 510 P.2d 818 (1973).
[16] Examples of restrictive titles include: "An Act Relating to the acquisition of property by public agencies," Daviscourt v. Peistrup, 40 Wash.App. 433, 437, 698 P.2d 1093, review denied, 104 Wash.2d 1008 (1985); "AN ACT relating to local improvements in cities and towns," Cory v. Nethery, 19 Wash.2d 326, 329-31, 142 P.2d 488 (1943); "AN ACT relating to the rights and disabilities of aliens with respect to land," De Cano v. State, 7 Wash.2d 613, 623, 110 P.2d 627 (1941).
[17] This is different from what constitutes the "title" when examining an initiative to the people; in that case the relevant title for the art. II, § 19 inquiry is the ballot title. Amalgamated Transit Union Local 587 v. State, 142 Wash.2d 183, 11 P.3d 762, 783 (2000).
[18] Furthermore, in the context of determining whether a title is general or restrictive, our Supreme Court examines only the bill's narrative description. See notes 15 and 16, supra.
[19] H.B. Rep., E2SHB 1557, at 3 (Wash.1995); S.B. Rep. (E2SHB 1557), 54th Leg., Reg. Sess. at 2 (Wash.1995).
[20] 1995 Final Legislative Report, 54th Wash. Leg., Reg. Sess. at 103-104.
[21] Laws of 1995, ch. 285, § 1. See also H.B. Rep., E2SHB 1557, at 3 (Wash.1995).
[22] Laws of 1995, ch. 285, § 29, 34; Former RCW 9A.82.010 (14)(dd), (ff) & (gg) (1995).
[23] Former RCW 9A.82.010(14) (Laws of 1985, ch. 455 § 2).
[24] We recognize that the Supreme Court recently declared the entire I-695 initiative unconstitutional. That decision was predicated upon holding that both the title of the initiative and the body of the initiative contained more than one subject. Amalgamated Transit, 11 P.3d at 786. In the instant case, the title of the Act contains only a single subject, and therefore the severability rule applies.
[25] Laws of 1995, ch. 285, § 29,34; Former RCW 9A.82.010 (14)(dd), (ff) & (gg) (1995).
[26] The only portion of the Act challenged here is Laws of 1995, ch. 285, § 37(2). We do not address the constitutionality of other sections of the Act, and make no holdings as to whether they fall within the subject of insurance fraud.