2014 JUL -7 AM 11:38

COURT OF APPEALS DIV I
STATE OF WASHINGTON
FILED

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 71666-2-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| RYAN DEE WHITAKER | ) | |
| | ) | |
| Appellant. | ) | FILED: July 7, 2014 |
| | ) | |

DWYER, J. — After a trial to the court, sitting without a jury, Ryan Whitaker was found guilty of two counts of child molestation in the first degree. Whitaker appeals, raising the following issues: (1) whether the trial court erred by allowing the child victim's counselor to give expert testimony; (2) whether he was denied the effective assistance of counsel by virtue of his trial attorney's failure to properly object to the counselor's testimony; (3) whether the trial court erred by declining to personally visit the scene of the crime; (4) whether the trial court erred by entering a no-contact order effective for 100 years; (5) whether he was denied effective assistance of counsel because his trial attorney did not interview or summon to court several potential witnesses; (6) whether the functions of the Indeterminate Sentence Review Board were unlawfully included in the pertinent

bill passed by the legislature; (7) whether the trial court erred by imposing as a condition of his sentence that he submit to plethysmograph testing at the direction of his community corrections officer; (8) whether the information charging Whitaker was deficient because it did not allege that he acted for his sexual gratification as an element of the offense of child molestation in the first degree; and (9) whether the trial court erred by overruling his challenge to the sufficiency of the evidence brought at the conclusion of the State's case in chief. We hold that the plethysmograph testing condition was improper and, accordingly, reverse that part of his sentence with instructions to the trial court to modify that condition on remand. In all other respects, we affirm the judgment and sentence.

Whitaker also filed a personal restraint petition, which was consolidated with his direct appeal. In his petition, Whitaker argues that his counsel's failure to interview or to call as witnesses three classmates of the child victim constituted ineffective assistance of counsel.[1] Even had Whitaker's counsel rendered deficient performance, however, Whitaker fails to establish that he suffered any resulting prejudice. Accordingly, we dismiss the petition.

I

In 2011, Whitaker was a member of the St. John's Ward of the Church of Latter Day Saints, located in Vancouver, Washington. Whitaker was also a

---

[1] Whitaker also raises this issue in his direct appeal. We resolve the issue in the context of the personal restraint petition because it contains additional factual averments. However, whether we analyze the issue pursuant to the standard of review applicable to direct appeals or pursuant to the personal restraint petition standard of review, our result is the same in this case.

teacher of primary school students. Between January 2011 and August 2011, his class of approximately eight students included the nine year old victim, M.S.

Every Sunday, the students at the church would gather for instruction in a large meeting room—the "sharing time" room. M.S.'s class would sit in the very back of the room. M.S. would frequently sit next to Whitaker, either because he asked her to sit next to him or because he took the seat next to her. During the time the students were in the "sharing time" room, they would be facing forward, toward the front of the room, where someone would lead them in song or would preach to them.

M.S. testified at trial that Whitaker would reach under her skirt and touch her vagina with his hand while they were in the "sharing time" room. She stated that he touched her in this manner every Sunday and that the other children did not see what he was doing.

M.S. also testified that, on another occasion, Whitaker asked her to stay behind and help him in a small classroom. Once they were alone, Whitaker kneeled down and touched her vagina with his hand over her dress for 10 seconds. Whitaker asked M.S. if it made her uncomfortable when he touched her. Although she did not respond to his question, she testified that it made her feel "weird" and she decided to tell her mother what had happened. That night, in August 2011, she told her mother what had been happening to her.

Subsequently, the State charged Whitaker with one count of rape of a child in the first degree and three counts of child molestation in the first degree. Whitaker waived his right to a jury trial and the case was tried before the

No. 71666-2-I/4

Honorable Robert Lewis.

At trial, Whitaker denied that he ever touched M.S. inappropriately. He called numerous witnesses to testify that it would have been impossible for him to do what M.S. had described. Steven Gonsalves,[2] Laurie Ogden, and Pamela Wise—three fellow teachers—all testified that Whitaker could not have touched M.S. in the "sharing time" room without being noticed. Paul and Michelle Pecora—the parents of a child in Whitaker's class—provided similar testimony.

Other students in Whitaker's class, including K.C., K.O., and J.K., were not subpoenaed by the defense to testify. These three children were each interviewed by Cynthia Bull, the investigating officer. Although the interviews were not included in her police report, they were made available to defense counsel in the form of CD recordings. While defense counsel did not call these children as witnesses, she did try to enter the contents of the interviews into evidence in an attempt both to impeach Detective Bull and to present exculpatory evidence. The trial court, however, did not admit the contents of the interviews.

Danielle Wilcox testified as an expert witness for the State. She is a family and child therapist with the Children's Center and she was M.S.'s counselor following her disclosure of sexual abuse. Although Whitaker's defense counsel objected, the trial court permitted Wilcox to offer an opinion as to whether M.S. expressed feelings that were consistent with someone who had experienced a traumatic event such as sexual abuse. She was not, however,

---

[2] Gonsalves served as a co-teacher with Whitaker on four Sundays and, on those days, sat with Whitaker's class in the back two rows.

- 4 -

permitted to testify as to any statements M.S. made or offer an opinion as to whether M.S. had, in fact, been sexually abused.

Whitaker requested that the trial judge view the site of the alleged crimes, but the judge declined to do so.

Judge Lewis entered findings of fact and conclusions of law, in which he ruled that the defendant was guilty of two counts of child molestation in the first degree. His findings and conclusions, in their entirety, are as follows:

## I. FINDINGS OF FACTS

1. Between January 1, 2011 and August 31, 2011, the defendant was a Sunday school teacher in the Church of Latter Day Saints, St. John's Ward. M.L.S. was a female child in the defendant's class during that time. On or between those dates, the defendant massaged the vagina of M.L.S. with his hand on at least two occasions.

2. On at least one occasion, the defendant touched M.L.S. in the larger "sharing time" room. The defendant would often have M.L.S. sit with him in the back row of the classroom. When he would touch her he would use his jacket to hide his actions, either putting it across their laps, or behind her. He then massaged her vagina and buttocks with his hand. He massaged her vagina and buttocks both over her tights, and under her clothing, on her skin.

3. Another incident occurred in the smaller classroom. The defendant had asked M.L.S. to stay behind to run an errand for him. When they were alone, he knelt in front of her. He asked her why she wasn't wearing her tights that day. He proceeded to massage her vagina with his hand over her dress. He asked M.L.S. if it made her feel uncomfortable when he would touch her. This incident prompted M.L.S. to tell her mother.

4. M.L.S. eventually disclosed the touching to her mother in August 2011. She approached her mother, Arica Smith, and told her that she needed to talk to her.

5. The defendant had no legitimate reason to touch M.L.S's vagina or buttocks.

6. M.L.S.'s date of birth is August 13, 2002. She was eight or nine years old at the time of the offense.

7. The defendant's date of birth is November 7, 1953. He was fifty-seven at the time of the offenses.

## II. CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties hereto and the subject matter of the action.

2. All of the above facts have been proven by the State beyond a reasonable doubt.

3. On two separate and distinct occasions, on or between January 1, 2011 and August 31, 2011, the defendant had sexual contact with M.L.S. M.L.S. was less than twelve years old at the time of the sexual contact and was not married to, or in a state-registered domestic partnership with, the defendant. The defendant was at least thirty-six months older than M.L.S.

4. The touching was of a sexual or intimate part of M.L.S., done for the purpose of gratifying sexual desires of either party.

5. The defendant is guilty of Child Molestation in the First Degree as alleged in count three of the information.[3]

6. The defendant is guilty of Child Molestation in the First Degree as alleged in count four of the information.[4]

7. At least one separate act of sexual contact between the defendant and M.L.S., pertaining to each count, has been proved beyond a reasonable doubt.

8. A defendant used a position of trust to facilitate a crime. The defendant gained access to the victim of the offense, M.L.S., because of the trust relationship. The defendant also gained access to the location of the offense, the Sunday school classrooms at the St. John's Ward of the Church of Latter Day Saints, because of the trust relationship.

9. The defendant is not guilty of Rape of a Child in the First Degree, as alleged in count one, and Child Molestation in the First Degree, as alleged in count two.

On March 5, 2013, Whitaker was sentenced to a minimum of 89 months in prison and a maximum sentence of life imprisonment. He was also sentenced to lifetime community custody. Additionally, the trial court imposed a sexual assault

---

[3] "That he, RYAN DEE WHITAKER, in the County of Clark, State of Washington, between January 1, 2011 and August 31, 2011, on an occasion separate and distinct from that charged in Counts 2 and 4 . . . ."

[4] "That he, RYAN DEE WHITAKER, in the County of Clark, State of Washington, between January 1, 2011 and August 31, 2011, on an occasion separate and distinct from that charged in Counts 2 and 3 . . . ."

protection order effective for 100 years.

Whitaker appealed and filed a personal restraint petition that was consolidated with his direct appeal. We address both herein.

II

Whitaker first contends that the trial court erred by permitting Wilcox to testify as an expert witness and that Wilcox offered improper testimony. This is so, he avers, because her testimony was based upon principles not generally accepted in the scientific community as required by Frye v. United States, 293 F. 1013 (D.C. Cir. 1923). However, because Whitaker has failed to overcome the presumption that—in a bench trial—the trial court disregards inadmissible or incompetent evidence when ruling, no appellate relief is warranted.

"A trial court's decision to admit expert testimony is reviewed for abuse of discretion." State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007).

"An expert's scientific or technical testimony must be based upon a scientific principle or explanatory theory that has gained general acceptance in the scientific community." State v. Jones, 71 Wn. App. 798, 814, 863 P.2d 85 (1993). "Under Frye, generalized testimony regarding a profile of behaviors of victims of sexual abuse must be sufficiently established to have gained general acceptance by the scientific community." Jones, 71 Wn. App. at 818. "[T]he use of generalized profile testimony, whether from clinical experience or reliance on studies in the field, to prove the existence of abuse is insufficient under Frye." Jones, 71 Wn. App. at 820. Such evidence may be presented, however, "to

rebut an inference that certain behaviors of the victim, such as sexual acting out, are inconsistent with abuse." Jones, 71 Wn. App. at 820.

It is significant that, in this case, no jury was empanelled. "'In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions.'" State v. Read, 147 Wn.2d 238, 245, 53 P.3d 26 (2002) (quoting Harris v. Rivera, 454 U.S. 339, 346, 102 S. Ct. 460, 70 L. Ed. 2d 530 (1981)). As our Supreme Court has explained:

> "In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. An appellate court will not reverse a judgment in a nonjury case because of the admission of incompetent evidence, unless all of the competent evidence is sufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made."

Read, 147 Wn.2d at 245 (quoting Builders Steel Co. v. Comm'r of Internal Revenue, 179 F.2d 377, 379 (8th Cir. 1950)).

When the State called Wilcox as an expert witness, Whitaker's defense counsel objected on the basis that Wilcox had not been disclosed as an expert witness. The trial court, however, allowed Wilcox to testify as an expert witness, subject to certain restrictions on the scope of her testimony.

> I will allow—if she believes she can make—express such opinions Ms. Wilcox to indicate in general the sorts of feelings since she's indicated—she's already indicated in her previous Offer of Proof that she's not a forensic person, that she believes that—or assumes that if a child says they've been sexually abused, then they were—she accepts that assumption.
> So she at least has indicated she can't—and makes no attempt to determine whether the person, in fact has been sexually abused based on what they're expressing.
> If she is in a position to testify that there are certain feelings

or emotions that sexual abuse victims express and that [M.S.] expressed—without going into the details of her statements— expressed similar statements, then she's permitted to testify as to that.

Absent some other showing that in fact I'm not being told and I don't think I would allow her to testify that based on what [M.S. is] saying, she's concluding that she was, in fact sexually abused. Only that those expressions of feelings are consistent with a person that—in her expert opinion has experienced some traumatic event like sexual abuse.

Whitaker's defense counsel objected again, directing the trial court's attention to this court's decision in Jones and arguing that Jones precluded the testimony that the trial court was allowing.[5] Specifically, defense counsel stated:

In a prosecution for molestation and rape of a child the court allowed a case worker to testify about the child's nightmares and the child's propensity to act out as they were common behaviors of essentially abused children, behaviors collectively called sometimes the sexual abuse syndrome.

The Defendant was convicted and appealed and argued the testimony should have been excluded based upon the Frye rule. Division 1 terms the issue difficult and reached something of a compromise holding that evidence of sexual abuse syndrome is objectionable under Frye when offered to prove the fact of abuse.

And it would appear that they're trying to enter this information to indicate that this is a child of abuse which is not relevant when the therapist has already testified that she wouldn't know the difference between someone alleging abuse that happens and alleging abuse that didn't happen.

The judge then asked the prosecutor whether he was offering testimony as to sexual abuse syndrome. The prosecutor responded that he was not offering testimony as to sexual abuse syndrome.

---

[5] On appeal, the State argues that Whitaker failed to preserve this issue for review. This is so, it claims, because Whitaker did not object after the trial court clarified that Wilcox could only testify as to whether M.S. had feelings that were consistent with someone who had experienced trauma, such as sexual abuse. The State's position is untenable. It was not incumbent upon Whitaker to interpose duplicative objections to the admission of Wilcox's testimony. The issue was properly preserved for review.

No I am not. I believe that that particular syndrome does not meet the criteria so I'm not offering the name of the syndrome or that these—these—in fact these characteristics make up that syndrome as I'm familiar with it, and they do not.

So they are some of the characteristics but they are not the full syndrome and the syndrome we're not asking for here.

The trial court did not change its ruling. However, the judge told defense counsel that if "after the testimony you think there's some additional piece of evidence that came in that you wish me to move me to strike, I will listen to your argument at that time."

On direct examination, the prosecutor asked Wilcox whether she had "an opportunity to make any observations with regard to something called traumagenic dynamics." Wilcox said that she had and she defined "traumagenic dynamics" as follows:

Traumagenic dynamics are—well there's four specific traumagenic dynamics outlined by David Finklehore (ph), PhD and Angela Brown, PhD.

And it's stigma, powerlessness, traumatic sexualization and betrayal. And these are four symptoms or dynamics that come up for children who have experienced sexual abuse.

And what they—what they do is an altering cognitive and emotional orientation to the world and creating trauma by distorting self-concept world view and effective capacities.

Wilcox then testified that she had observed all four of these dynamics in her treatment of M.S.

In light of our decision in Jones, the trial court's decision to admit Wilcox's testimony is troubling. Although the State asserted to the trial judge that it was not attempting to elicit testimony regarding sexual abuse syndrome, on appeal the State failed to articulate a distinction between sexual abuse syndrome and

"traumagenic dynamics." The testimony elicited from Wilcox appears to be generalized profile testimony being offered to prove the existence of abuse, which is the type of testimony foreclosed by Jones.

However, even if the trial court did abuse its discretion in making its evidentiary ruling, Whitaker has not overcome the presumption that the trial court did not rely on the inadmissible evidence in rendering its decisions on guilt. In order to do so, he must establish either that all of the competent evidence received was insufficient to support the convictions or that the incompetent evidence induced the trial court to make an essential finding that it otherwise would not have made. Although the trial court did not credit the entirety of M.S.'s testimony—as evidenced by the acquittal on two counts charged in the second amended information—the testimony that was credited was sufficient to support Whitaker's conviction on two counts. Furthermore, contrary to Whitaker's position, the trial court's decision to acquit Whitaker on two counts does not show that Wilcox's testimony induced the court to make an essential finding that otherwise would not have been made. Had Wilcox's testimony had the effect claimed by Whitaker, presumably the trial court would have convicted Whitaker on all four counts. Yet, Whitaker provides no explanation as to why Wilcox's testimony induced the trial court to convict on two counts and to acquit on two others. Indeed, Wilcox's testimony is not referenced at all in the trial court's findings of fact.

The record supports the conclusion that the trial court was well-versed as to the evidentiary dangers addressed in our Jones decision, and the trial judge

was careful not to allow Wilcox to testify as to what had actually happened between M.S. and Whitaker or what M.S. had said to her about that. The trial court was well aware of its obligation to not allow Wilcox to "vouch" for M.S. as a witness. Given the care taken by the trial court in ruling on the various questions raised by Wilcox's proffered testimony, there is no reason for us to believe that the trial court put Wilcox's testimony to an improper use. Because Whitaker has failed to rebut the presumption that the trial court did not rely on inadmissible or incompetent evidence in reaching its findings as to guilt, no appellate relief is warranted.[6, 7]

### III

Whitaker next contends that the trial court abused its discretion by not viewing the scene of the crime. This is so, he asserts, because a view "could only serve to clarify and dispel" the contradictory and confusing testimony offered regarding the "sharing time" room. We disagree.

"Under CrR 6.9, the trial court is given the discretion to allow the jury to view the crime scene." State v. Land, 121 Wn.2d 494, 501, 851 P.2d 678 (1993). Accordingly, "[a] trial court's refusal to permit a jury view is reviewed under an abuse of discretion standard." Land, 121 Wn.2d at 502. "The purpose of permitting a jury to view the crime scene is to enable it to better understand the

---

[6] Whitaker also argues that Wilcox improperly testified that she believed that M.S. was telling the truth about being molested and that it was her personal opinion that Whitaker molested M.S. This argument is based on testimony Wilcox gave during an offer of proof. There is no danger that the trial court improperly relied on such testimony in reaching its final decisions.

[7] Whitaker also argues that, in the event that we conclude that his counsel failed to properly interpose an objection to the admission of Wilcox's testimony, his counsel's assistance was ineffective. Given our conclusion that defense counsel properly preserved this issue for review, we need not consider this argument.

evidence produced in court." Land, 121 Wn.2d at 501-02. The same concern applies to the trial court's decision as to whether a view of the scene would be beneficial to the judge in a bench trial.

In denying Whitaker's request, the trial court observed that viewing the site would not reveal anything that would constitute evidence and that viewing the site would be necessary only if there was confusion about the testimony or evidence presented. Although Whitaker asserts that the trial court received directly contradictory evidence "as to who could see what, and from where," Whitaker cites to nothing in the record to support this contention or to demonstrate why the trial court was disabled from correctly determining which evidence was credible. This decision fell squarely within the trial court's discretion. There was no error.[8]

IV

Whitaker next contends that the sexual assault protection order issued by the trial court is void on its face. This is so, he argues, because although the pertinent statute sets forth an indeterminate duration for such orders, the trial court issued an order that would expire on a specific date. We disagree.

We review a trial court's imposition of sentencing conditions for abuse of discretion. State v. Deskins, 180 Wn.2d 68, 77, 322 P.3d 780 (2014). A trial court abuses its discretion when its decision is manifestly unreasonable or based

---

[8] Whitaker's duplicative argument contained within his statement of additional grounds is also of no avail.

on untenable grounds or for untenable reasons. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971). Sentencing conditions are generally upheld if they are reasonably crime related. State v. Riley, 121 Wn.2d 22, 36, 846 P.2d 1365 (1993). An order prohibiting contact with the victim of a crime is a crime-related prohibition. In re Pers. Restraint of Rainey, 168 Wn.2d 367, 376, 229 P.3d 686 (2010).

In conjunction with the trial court's authority under RCW 9.94A.505(8),[9] a statute specifically authorizes issuance of a separate sexual assault protection order if no contact with the victim is imposed as a condition of a defendant's sentence. See RCW 7.90.150(6)(a). This statute allows the trial court to impose an order prohibiting the defendant from having contact with the victim for a period of time to include two years following expiration of a sentence or period of community supervision. The statute provides:

> (6)(a) When a defendant is found guilty of a sex offense as defined in RCW 9.94A.030 . . . , and a condition of the sentence restricts the defendant's ability to have contact with the victim, the condition shall be recorded as a sexual assault protection order.
> . . . .
> (c) A final sexual assault protection order entered in conjunction with a criminal prosecution shall remain in effect for a period of two years following the expiration of any sentence of imprisonment and subsequent period of community supervision, conditional release, probation, or parole.

RCW 7.90.150.

Whitaker was sentenced to an indeterminate sentence that, among other things, included lifetime community custody. Issuing an order with an expiration

---

[9] This provision empowers a sentencing court, as a part of any sentence, to impose and enforce crime-related prohibitions and affirmative conditions.

date set 100 years in the future guarantees that the victim will be protected for as long as Whitaker remains alive, whether he remains in prison or is released on community custody. This achieves the statute's goal. The trial court did not abuse its discretion.

V

In his personal restraint petition, Whitaker contends that he received ineffective assistance of counsel. This occurred, he avers, because his counsel failed to interview and subpoena as witnesses three classmates of M.S. We disagree.

As part of her investigation, Detective Bull interviewed K.C., K.O., and J.K.—three classmates of M.S. The interviews were recorded and transcribed.

During K.C.'s interview, he told Detective Bull that in the sharing time room, M.S. would sit on one side of Whitaker and he would sit on the other. He said that Whitaker usually kept his jacket on but that he would give it to someone else to wear if that person was cold. K.C. said that Whitaker never gave his jacket to M.S. When asked why not, K.C. said that it was because "she'd (sic) mostly not at church because she was gone for three months." When told to focus on the relevant time period, he said that M.S. never wore Whitaker's jacket. He immediately changed his mind and said that M.S. did wear Whitaker's jacket. Ultimately, K.C. opined that he did not really know if Whitaker's jacket was ever on M.S.'s lap. K.C. never saw Whitaker touch M.S. or any other child inappropriately.

K.O. said she never saw Whitaker take his jacket off because it did not get hot in class. She said Whitaker never did anything to make her feel uncomfortable. She said that Whitaker sat in the last row, whereas she sometimes sat in the first of their two rows. When asked if there was anyone in particular who usually sat next to Whitaker, she said, "just girls—he wanted the girls." She said M.S. usually sat by herself, by K.O., or by another girl. Contrary to her earlier statement, she said that Whitaker did, in fact, take his jacket off in class sometimes. He would put the jacket on the back of a chair. She said that he would do that in the smaller classroom and she would not notice what he did in the sharing room.

J.K. told Detective Bull that Whitaker sat in the back row during the sharing hour. She said that everybody sat next to Whitaker and that M.S. sat next to Whitaker a lot. She said that Whitaker would sometimes take his jacket off and put it on the back of a chair. She said that he never put his jacket on someone's lap, but then said she would not have seen what he did with his jacket because she would not have been looking. She said that sometimes Whitaker would tickle a student on the middle of the student's back. M.S. was one of the students he tickled. J.K. thought that Whitaker only tickled her and M.S. When he tickled J.K., he would do it from behind her in the big primary class. When asked if Whitaker ever asked her to do something that she did not think was okay, J.K. said she did not remember.

Detective Bull asked J.K. whether she ever saw Whitaker touch M.S.'s leg and she said, "I don't know." Bull asked J.K. if there was anything about

- 16 -

Whitaker that made her uncomfortable, about how he acted or what he did, to which she replied: "In primary if I was sitting next to him he would sort of do this over the chair (moves arm as though putting it on the back of a chair)." Bull asked J.K if there was anything she did not like about Whitaker and she shook her head "no." She was then asked if there was anything she did like about Whitaker and she again shook her head "no." Bull asked, "Is there—have you ever told anybody about having any problems with him?" J.K. shook her head "no." Bull then asked, "Okay. Is that something you could tell somebody?" J.K. shook her head "no." Bull then told J.K. that she could tell her anything and she would not get in trouble, to which J.K. nodded her head. Bull then asked, "So—is there anything that we should talk about?" J.K. replied, "I don't know" and shrugged her shoulders. Bull then asked J.K. if she was ever touched on her private parts and she replied, "no." She also said that she never saw Whitaker touch M.S. on her private parts. Bull asked how it made J.K. feel when Whitaker tickled her and she said it made her feel funny.

Whitaker's trial counsel did not call as a trial witness any of the three children who were interviewed by Detective Bull. In fact, Whitaker's trial attorney did not interview them. At trial, she did attempt to have the recordings of the interviews with Detective Bull admitted into evidence, but the trial court denied her proffer. Defense counsel, in a declaration included in Whitaker's personal restraint petition, stated, "I wanted to call these witnesses, however, I was informed prior to trial that none of them were attending the church any longer." She went on to state, "I did not ask my investigator to locate the children. It was

not a tactical choice to not call these exculpatory witnesses. I simply did not obtain their presence, nor issue subpoenas to them. I wish I had."

"To obtain state judicial review of a decision through a personal restraint proceeding, an inmate is required to demonstrate both that he or she is being restrained and that the restraint is unlawful." In re Pers. Restraint of Costello, 131 Wn. App. 828, 832, 129 P.3d 827 (2006). Relief may be obtained "by demonstrating either a constitutional violation or a violation of state law." Costello, 131 Wn. App. at 832. "[I]n the context of constitutional error, a petitioner must satisfy his threshold burden of demonstrating actual and substantial prejudice." In re Pers. Restraint of Cook, 114 Wn.2d 802, 810, 792 P.2d 506 (1990). "Unless a petitioner can make a prima facie showing of such prejudice, his petition will be dismissed." Cook, 114 Wn.2d at 810.

"In order to prevail on a claim of ineffective assistance of counsel," Whitaker "must demonstrate (1) deficient performance, that his attorney's representation fell below the standard of reasonableness, and (2) resulting prejudice that, but for the deficient performance, the result would have been different." State v. Hassan, 151 Wn. App. 209, 216-17, 211 P.3d 441 (2009). However, even deficient performance by counsel "does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland v. Washington, 466 U.S. 668, 691, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding" and so "any deficiencies in counsel's performance must be

prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Strickland, 466 U.S. at 691-92.

"Where counsel's actions involve trial tactics, the courts have declined to find constitutional violations." State v. Jones, 33 Wn. App. 865, 872, 658 P.2d 1262 (1983). "Generally, the decision to call a witness will not support a claim of ineffective assistance of counsel. However, the presumption of counsel's competence can be overcome by a showing, among other things, that counsel failed to conduct appropriate investigations." State v. Thomas, 109 Wn.2d 222, 230, 743 P.2d 816 (1987) (citations omitted).

When an ineffective assistance claim is based on counsel's failure to call a witness, our Supreme Court has held that the defendant's showing with respect to prejudice is insufficient when that witness's testimony does not provide any significant new facts or evidence that could have led the jury to a different conclusion. See, e.g., In re Pers. Restraint of Davis, 152 Wn.2d 647, 742-43, 101 P.3d 1 (2004) (where defense expert could not "provide any significant new facts or evidence that might have led the jury to a different conclusion," defense counsel's failure to call the expert as a witness did not constitute ineffective assistance).

Without deciding whether Whitaker's counsel's performance was, in fact, deficient, it is clear that Whitaker cannot establish the requisite prejudice to make a prima facie showing of ineffective assistance of counsel. The central issues in this case were (1) whether M.S. was credible, (2) whether Whitaker was credible, and (3) whether it was physically possible for Whitaker to have committed the

acts in the manner described by M.S. At trial, Whitaker offered testimony from a number of adults who testified that what Whitaker had been accused of doing would have been impossible for him to do without being noticed. Additionally, the trial court heard extensive testimony regarding the configuration of the "sharing time" room, the configuration of the chairs, the design of the chairs, and the vantage point of the witnesses. Ultimately, the trial court determined that at least part of M.S.'s testimony was credible and that it was physically possible for Whitaker to have committed the acts he was accused of committing in the manner described by M.S.

Testimony elicited from the three classmates of M.S. would not have provided any new significant facts or evidence that would have led the trial court to a different conclusion. Although none of the children saw Whitaker touch M.S. inappropriately, the contents of the interviews indicate that the children were not particularly observant of their surroundings. Their accounts alternate between confusion and uncertainty, whereas several adult witnesses testified that it would have been impossible for Whitaker to have done that which he stood accused of doing. The adult witnesses spoke in no uncertain terms, saying that Whitaker would have to have been "invisible" or a "contortionist." The children's testimony would not have added to the strength of this position.

On the other hand, the children also provided potentially damaging information, particularly J.K., who stated that Whitaker always sat next to girls and that he tickled his students, which made J.K. uncomfortable. Ultimately, testimony from these students was unlikely to make any difference in the

outcome. Accordingly, Whitaker does not establish prejudice and his petition is dismissed.[10]

## VI

Whitaker raises a number of arguments in a statement of additional grounds. Only one warrants appellate relief.

Whitaker contends that he was denied effective assistance of counsel. This occurred, he argues, when his counsel failed to interview or subpoena as witnesses other classmates of M.S. and other teachers who co-taught with Whitaker. However, because he provides no indication that any of these witnesses would have offered exculpatory testimony, his claim fails.

Whitaker argues that his counsel should have interviewed and subpoenaed four students in M.S.'s class not mentioned in his appellate briefing. He asserts that these children were interviewed by Detective Bull and rebutted M.S.'s version of the events. The record does not support this assertion. Detective Bull testified that, "[n]one of them could corroborate *or discount* [M.S.'s version of the events]." (Emphasis added.) Even if Whitaker's counsel should have at least interviewed these children, Whitaker cannot establish that he was prejudiced by counsel's failure to call them as witnesses. This is so because Whitaker provided no indication that these children would have offered exculpatory testimony.

---

[10] We reiterate that Whitaker also raised this issue on direct appeal. That claim of error also fails because of the absence of prejudice, as required by Strickland.

Whitaker argues that his counsel should have interviewed and subpoenaed Whitaker's co-teachers because failing to call them left many weeks unaccounted for in the defense theory of the case. However, Whitaker does not demonstrate any likelihood that the outcome would have been different had they been interviewed or called as witnesses. He provides no indication that these co-teachers would have offered exculpatory testimony. Thus, he cannot establish that he was prejudiced.

VII

Whitaker next contends that the court abused its discretion by issuing a judgment and sentence that contained provisions made without authority of law. This is so, he argues, because they were based upon the functions of a lapsed Indeterminate Sentence Review Board (ISRB).

Washington State Constitution article II, section 19 provides: "[no] bill shall embrace more than one subject, and that shall be expressed in the title." Although the title does not need to act as an index to its contents, "the larger body of case law finds this court requiring proposed legislation carry a title that 'would lead to an inquiry into the body of the act, or indicate to an inquiring mind the scope and purpose of the law.'" Patrice v. Murphy, 136 Wn.2d 845, 853, 966 P.2d 1271 (1998) (quoting Young Men's Christian Ass'n v. State, 62 Wn.2d 504, 506, 383 P.2d 497 (1963)).

"A legislative title can be either general or restrictive." State v. Thomas, 103 Wn. App. 800, 807, 14 P.3d 854 (2000). "Where the title of the act is general and comprehensive, we liberally construe its subject to determine whether it

No. 71666-2-I/23

embraces the subject of all the provisions expressed within the act."[11] Thomas, 103 Wn. App. at 807-08. "A restrictive title, on the other hand, 'is one where a particular part or branch of a subject is carved out and selected as the subject of the legislation.'"[12] Thomas, 103 Wn. App. at 808 (quoting State v. Broadaway, 133 Wn.2d 118, 127, 942 P.2d 363 (1997)). "A restrictive title will not be liberally regarded and provisions not within its subject are not given force." Thomas, 103 Wn. App. at 808

The relevant title to this inquiry is the word, phrase, or phrases following "'AN ACT Relating to . . .' and preceding the first semi-colon." Thomas, 103 Wn. App. at 808.

In 2001, a bill was passed which repealed the termination clause in former RCW 9.95.0011 (2001), thereby preserving the existence of the ISRB. ENGROSSED THIRD SUBSTITUTE S.B. 6151, 57th Leg., 2d Spec. Sess. (Wash. 2001). This bill was given the title: "AN ACT Relating to the management of sex offenders in the civil commitment and criminal justice systems."

Whitaker alleges that this title was restrictive and the inclusion of the language repealing the ISRB termination provision of former RCW 9.95.0011 violated our state constitution. We disagree. The title of the bill was a general title. It did not carve out and select a particular part of a subject; rather, it

---

[11] Examples include: "AN ACT Relating to violence prevention"; "An Act Relating to Community Colleges"; and "AN ACT Relating to industrial insurance." Thomas, 103 Wn. App. at 808 n.15.

[12] Examples include: "An Act Relating to the acquisition of property by public agencies"; "AN ACT Relating to local improvements in cities and towns"; and "AN ACT Relating to the rights and disabilities of aliens with respect to land." Thomas, 103 Wn. App. at 808 n.16.

- 23 -

focused on sex offenders generally. Construed liberally, the bill did embrace the subject of all the provisions contained within it, as the ISRB deals with the management of sex offenders. Accordingly, Whitaker's contention provides no basis for appellate relief.

VIII

Whitaker next contends that the trial court erred by including an impermissible condition in his felony judgment and sentence. The offending condition, he alleges, is: "You shall submit to plethysmography exams, at your own expense, at the direction of the community corrections officer." We agree.

In State v. Riles, 135 Wn.2d 326, 957 P.2d 655 (1998), abrogated on other grounds by State v. Valencia, 169 Wn.2d 782, 239 P.3d 1059 (2010), our Supreme Court upheld conditions requiring plethymograph testing as part of the defendant's sexual deviancy treatment. Riles, 135 Wn.2d at 343-45, 352 ("[A] sentencing court may not order plethysmograph testing unless it also requires crime-related treatment for sexual deviancy. . . . Plethysmograph testing does not serve a general monitoring purpose."). Recently, we held that a trial court errs by requiring that a defendant, as a condition of community custody, submit to plethysmograph testing at the discretion of a community corrections officer. State v. Land, 172 Wn. App. 593, 605-06, 295 P.3d 782 (2013). In concluding that this violates a defendant's constitutional right to be free from bodily intrusions, we held that "testing can properly be ordered incident to crime-related treatment by a qualified provider" but "it may not be viewed as a routine

monitoring tool subject only to the discretion of a community corrections officer." Land, 172 Wn. App. at 605-06.

Although Whitaker was required to engage in sexual deviancy treatment as a condition of his sentence, the condition imposed regarding plethysmograph testing was made subject to the discretion of a community corrections officer. In order for plethysmograph testing to be properly imposed as a condition of sentencing, it must be "incident to crime-related treatment *by a qualified provider.*" Land, 172 Wn. App. at 605 (emphasis added). A community corrections officer is not a qualified provider. Therefore, on remand, this condition must be stricken from Whitaker's sentence or modified to comply with the authorities discussed herein.[13]

## IX

Whitaker next contends that the trial court erred by permitting the trial to proceed on an inadequate information. The information was inadequate, he argues, because it failed to allege all of the essential elements of each crime— specifically, that it failed to allege and state particular facts supporting the essential element of "purpose or intent to gratify sexual desires of either party." We disagree. Because sexual gratification is not an element of child molestation, Whitaker's claim fails. See State v. Lorenz, 152 Wn.2d 22, 34, 93 P.3d 133 (2004) ("Had the legislature intended a term to serve as an element of the crime,

---

[13] In Whitaker's reply brief, his attorney raises, for the first time, an argument with respect to another condition in Whitaker's judgment and sentence—specifically, the requirement that he consent to DOC home visits to monitor compliance with supervision. Given that this claim of error was raised for the first time in the reply brief, we do not consider it. See, e.g., State v. Chen, 178 Wn.2d 350, 358 n.11, 309 P.3d 410 (2013).

it would have placed 'for the purposes of sexual gratification' in RCW 9A.44.083. Rather, the definition of 'sexual contact' clarifies the meaning such that it excludes inadvertent touching or contact from being a crime."). Definitions need not be alleged in an information. State v. Johnson, __ Wn.2d __, 325 P.3d 135, 138 (2014).

X

Whitaker finally contends that the trial court erred by denying the defense motion for a directed verdict made at the conclusion of the State's case in chief. However, because Whitaker presented evidence following the trial court's denial of his motion, he waived his right to challenge the sufficiency of the evidence presented by the State in its case in chief. See State v. Chavez, 65 Wn. App. 602, 605, 829 P.2d 1118 (1992) ("When a defendant presents evidence in his or her behalf after the trial court has denied the defendant's motion to dismiss a charge because of insufficient evidence, the defendant waives his or her right to challenge the sufficiency of the evidence presented by the State"). No appellate relief is warranted.

The judgment is affirmed. However, we remand to the trial court with instructions to strike or modify the condition of sentence requiring Whitaker to submit to plethysmograph testing at the discretion of a community corrections officer.

Whitaker's personal restraint petition is dismissed.

We concur: